**In re SPRAGUE.**

[Cite as *In re Sprague* (1996), 113 Ohio App.3d 274.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–12–218.

Decided Aug. 5, 1996.

*John F. Holcomb,* Butler County Prosecuting Attorney, *Kathleen D. Romans,* Assistant Prosecuting Attorney, for appellee.

*Bradley D. Bolinger,* for appellant Della Sprague.

*Candi Cornett,* for Mark Sprague.

*Kathy K. Dudley,* guardian *ad litem.*

*David Garretson,* for guardians Gary and Diane Cromer.

KOEHLER, Judge.

Appellant, Della Sprague, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of Sprague's son, Kevin, to Butler County Children Services Board ("BCCSB"). We affirm.

BCCSB filed a complaint with the juvenile court in 1991 alleging two-month-old Kevin to be a dependent child based on his failure to thrive. Kevin was adjudicated dependent, and temporary custody was granted to BCCSB. Kevin was placed with his maternal grandmother, Delores Hager.

Two subsequent dependency complaints were filed in 1994 and 1995. The first was based on the allegation that Della Sprague and Kevin's father, Mark

Sprague, were responsible for the death of Kevin's older sibling. At that time, Kevin was placed with his paternal aunt and uncle, Gary and Diane Cromer. The second complaint alleged that Mark Sprague had been convicted of rape and felonious sexual penetration, that Della Sprague had been convicted of involuntary manslaughter, and that both parents were incarcerated.

The juvenile court overruled Della Sprague's motion to be transported from the Ohio State Reformatory for Women for the adjudicatory and dispositional hearings. At the November 29, 1995 hearing, Kevin was adjudicated dependent. At the dispositional hearing on December 4, 1995, permanent custody of Kevin was granted to BCCSB. Della Sprague appeals from that decision, assigning the following as error:

"The trial court erred to the prejudice of the appellant when it overruled her motion for an order transferring her from the reformatory where she was being held to attend the permanent custody hearing concerning her son, without providing an alternative method in which she could be heard."

Appellant argues that the state's failure to transport her from the reformatory to court for the hearings violated her right to due process. A parent has a fundamental right to care for and have custody of his or her child. *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606. This right is not lost simply because the parent has lost temporary custody of the child to the state. *Id.* at 751–755, 102 S.Ct. at 1394–1395, 71 L.Ed.2d at 604–608. Parental custody may only be terminated through procedures which satisfy due process requirements. *Id.* at 754, 102 S.Ct. at 1395, 71 L.Ed.2d at 606–607. Thus, the issue here is whether an inmate has the right to personally appear at hearing concerning the custody of his or her children. See *In re Davis* (Mar. 30, 1995), Franklin App. No. 94APF08–1205, unreported, 1995 WL 141172.

■ Generally, Ohio courts do not recognize an absolute right for an inmate to be present at a civil proceeding to which he is a party. *Mancino v. Lakewood* (1987), 36 Ohio App.3d 219, 221, 523 N.E.2d 332, 334–335. Specifically, courts have used the balancing test established in *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33–34, to determine parental due process rights in custody termination proceedings. See, *e.g.*, *In re Harding* (Jan. 25, 1995), Summit App. No. 16552, unreported, 1995 WL 28993. The three factors considered in a *Mathews* analysis are (1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural requirements. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

■ Under the first factor, we have already noted appellant's fundamental right to raise her child. See *Santosky*, 455 U.S. at 753, 102 S.Ct. at 1394, 71

L.Ed.2d at 606. On the second factor, however, appellant's risk of erroneous deprivation was low, considering that appellant was incarcerated for the death of her older child and was represented by counsel at both the adjudication and disposition hearings, and that a full record was made of the proceedings. See *In re Smith* (Mar. 1, 1995), Summit App. No. 16778, unreported, 1995 WL 89455.

In addition, although appellant's motion to be present at the hearing was denied, appellant took no steps to present her testimony by an alternate method such as a deposition. See *Harding*, Summit App. No. 16552, unreported. See, also, Civ.R. 30(A), 32(A)(3). Under the third factor, the governmental interest in meeting Kevin's best interests, as well as its interest in minimizing the risk and expense of transporting prisoners, outweighs appellant's interest in personally appearing at the hearing. See *Harding*.

Under the circumstances of this case, appellant's right to due process was not violated by the juvenile court's denial of her motion to personally appear at the custody termination hearing. See *id.*; see, also, *Smith*, Summit App. No. 16778, unreported. Appellant's assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and POWELL, J., concur.