{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, Juvenile Division. Because we find that the trial court did not err in terminating the parental rights of Jesse P., we affirm the decision of the trial court.
 {¶ 2} Joseph P. was born to Joan P. and appellant Jesse P. on November 30, 2000. On April 18, 2001, a magistrate granted an order for emergency shelter care requested by an employee of appellee Lucas County Children's Services ("LCCS"). The magistrate found that emergency shelter care was necessary because there was probable cause to believe that Joseph P. was in "immediate danger" and that removal was "needed to prevent immediate or threatened physical or emotional harm and continuation in the home would be contrary to the best interest of the child * * *." This finding was based on several facts, including: (1) that both parents had been involved in physical confrontations with one another; (2) that drugs and alcohol had been found in the home; (3) that Joan P. and appellant had previously had two children removed from their custody because they failed to follow a case plan set up for them; (4) that appellant's mother, who lived in the home, was often drunk and "throw[ing] things"; and (5) that appellant was on probation for domestic violence against his mother-in-law and was violating his probation. A complaint in dependency and neglect and a motion for a shelter care hearing were filed on the same day. At the hearing on the motion for shelter care, the magistrate granted temporary custody of Joseph to Joan's mother, Barbara A. A case plan was set up for Joan and appellant. After a hearing on July 3, 2001, the trial court adjudicated Joseph a dependent and neglected child on November 5, 2001.
 {¶ 3} In August 2001, LCCS moved to change temporary custody from Barbara A., Joseph's maternal grandmother, to LCCS, alleging in their motion that Joan and appellant had not complied with the case plan, that Barbara A. was willing to adopt Joseph should LCCS secure permanent custody of him, and that the motion for the change of temporary custody was to facilitate this course of events. The magistrate granted the motion on November 15, 2001.
 {¶ 4} On April 12, 2002, LCCS moved for permanent custody of Joseph. A hearing was held before the trial court on August 29, 2002. Appellant was incarcerated on the day of the hearing but was not conveyed to court. Before the start of the hearing, appellant's attorney represented to the court that appellant wished to be conveyed for the hearing and that she had made such arrangements; however, appellant was subsequently moved to another prison and did not communicate this fact to his attorney. The attorney only learned of appellant's whereabouts a few days before the hearing and objected to the hearing proceeding without appellant. The trial court overruled the objection, noting case law holding that the hearing is civil in nature and a court is not required to have a party conveyed from prison to be present for a civil hearing. The court also inquired of the attorneys and Joan as to why appellant was incarcerated and how long a term he was expected to serve. Upon being told that appellant had one year and eight months left on his term, the trial court indicated that he would have denied a motion to convey because appellant's incarceration left no chance for appellant to be reunified with his son. Therefore, the court ordered that the hearing proceed despite appellant's absence. At the start of the hearing, Joan indicated that she was not contesting LCCS' motion for permanent custody, and the hearing continued as to appellant only.
 {¶ 5} The only witness to testify at the hearing was the caseworker, Sherita Elam. Elam testified that she created a case plan for appellant, and the original case plan goal was reunification.[1] The plan called for appellant to take part in services for parenting, substance abuse, and how to maintain stable housing. The plan also required appellant to undergo a diagnostic assessment. Elam testified that she reviewed the plan with appellant on several occasions. In terms of appellant's compliance with the plan, Elam testified that appellant went to some of the parenting classes but missed several others. Ultimately, appellant did not successfully complete the parenting classes. Appellant did not undergo the mental health diagnostic assessment called for in the plan. He did, however, complete the diagnostic assessment for substance abuse, despite missing the first two scheduled appointments. No treatment was recommended based on appellant's self-disclosure. However, according to Elam, the individual completing the assessment believed that appellant was minimizing his "history and criminal history." The assessor recommended that appellant undergo a mental health diagnostic and submit to random urine screening. Appellant did not follow through with either of these recommendations.
 {¶ 6} Appellant also failed to fully exercise his right of visitation with Joseph. Although appellant was entitled to supervised visitation (due to the allegations of domestic violence in the home), he visited with Joseph infrequently, his last visit being in December 2001; he was not incarcerated until July 2002. (Elam testified that appellant was incarcerated on and off between December 2001 and July 2002.) Finally, Elam testified that Joseph has been living with his grandparents and his siblings, and the grandparents wished to adopt Joseph.
 {¶ 7} At the close of evidence, the trial court found that LCCS had shown by clear and convincing evidence that appellant had not availed himself of the services offered by LCCS, that appellant had not corrected the conditions that led to Joseph's removal from the home, that appellant's long term incarceration will make it impossible for appellant to correct these conditions, and that it was in Joseph's best interests to grant permanent custody of Joseph to LCCS. In its judgment entry, the trial court indicated that it made findings pursuant to R.C. 2151.353(A)(4) and R.C. 2151.414(E)(1), (2), (4), (10), (12), (13), (14), and (16).
 {¶ 8} Appellant now appeals, setting forth the following assignments of error:
 {¶ 9} "I. The trial court's grant of permanent custody was not supported by clear and convincing evidence and the determination that LCCSB made reasonable efforts to prevent the removal of the minor child was in error and prejudiced the appellant.
 {¶ 10} "II. The trial court erred to the prejudice of the appellant when it found that it was in the child's best interest that the plaintiff-appellee be granted permanent custody of the minor child.
 {¶ 11} "III. The trial court improperly held the permanent custody hearing outside the prescribed time limits set forth in ORC 2151.414 and the judgment entry was journalized out of time which prejudiced the appellant.
 {¶ 12} "IV. The trial court improperly held the permanent custody hearing without conveying the appellant, Jesse [P.] to be present.
 {¶ 13} "V. The permanent custody hearing was procedurally deficient as the appellant did not have effective assistance of counsel and his due process rights were violated as a result."
 {¶ 14} We take appellant's first and second assignments of error as arguing that the judgment was not supported by clear and convincing evidence. Therefore, we shall address them together. R.C. 2151.353(A)(4) provides:
 {¶ 15} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 16} " * * *.
 {¶ 17} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. * * *."
 {¶ 18} R.C. 2151.414(D) provides:
 {¶ 19} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 20} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 21} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 22} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 23} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 24} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 25} "* * *."[2]
 {¶ 26} As pertinent to this case, R.C. 2151.414(E) provides:
 {¶ 27} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 28} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 29} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 {¶ 30} "* * *.
 {¶ 31} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 32} "* * *.
 {¶ 33} "(10) The parent has abandoned the child.
 {¶ 34} "* * *.
 {¶ 35} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 36} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 37} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 38} "* * *.
 {¶ 39} "(16) Any other factor the court considers relevant.
 {¶ 40} "* * *."
 {¶ 41} The Supreme Court of Ohio has held that clear and convincing evidence is:
 {¶ 42} "* * * that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 43} Appellant argues, first, that, pursuant to R.C.2151.414(E)(1), the court erred in finding that LCCS made diligent efforts to assist appellant. According to appellant, Elam testified that one of LCCS' initial concerns was that appellant could not provide adequate housing, but Elam did not testify that LCCS made any efforts to assist appellant in securing housing. We disagree. First, the record shows that LCCS included assistance for housing issues as a part of the case plan. The semi-annual review indicates that appellant did not comply with this part of the case plan as he and Joan moved frequently. Second, even if the court's finding under R.C. 2151.414(E)(1) is not supported by clear and convincing evidence, (E)(1) is but one finding the court may make in order to find that a child cannot or should not be placed with either parent. The court made findings under seven other sections as well, any one of which would support a finding that Joseph could not or should not be placed with appellant. We discuss these other sections below.
 {¶ 44} Appellant also argues broadly that the trial court's findings were not supported by clear and convincing evidence. With regard to the factors in R.C. 2151.414(D), which the court must consider to determine the best interests of the child, there was evidence that Joseph had only sporadic contact with appellant but was in stable housing with his grandparents, who wished to adopt him, and his siblings. See R.C.2151.414(D)(1). There was also evidence that, at the time the court filed its judgment entry, Joseph had been in the temporary custody of LCCS for a consecutive 12 month period. See R.C. 2151.414(D)(3). Finally, the evidence showed that Joseph could be legally adopted and thus provided a "legally secure permanent placement" if LCCS were given permanent custody. See R.C. 2151.414(D)(4).
 {¶ 45} With regard to the factors in R.C. 2151.414(E), which a court must consider to determine whether the child can be or should be placed with either parent within a reasonable amount of time, there was evidence that LCCS made diligent efforts to assist appellant by providing him with a case plan and various services, see R.C. 2151.414(E)(1), and that appellant, by failing to comply with the case plan, failed to correct the problems that led to Joseph's removal from the home, id. There was also evidence that appellant demonstrated a lack of commitment toward Joseph by failing to regularly visit with Joseph when appellant was not incarcerated, see R.C. 2151.414(E)(4), and that appellant was incarcerated at the time of the motion for permanent custody and would not be available to care for Joseph for at least 18 months, see R.C.2151.414(E)(12).[3] There was also evidence that appellant was frequently incarcerated, see R.C. 2151.414(E)(13). Based on the record, we find that LCCS established by clear and convincing evidence that permanent custody to LCCS was proper, and we find that the trial court did not err in so ordering. Appellant's first and second assignments of error are found not well-taken.
 {¶ 46} In his third assignment of error, appellant contends that the trial was not held and the judgment entry was not filed within the statutory time limits. R.C. 2151.414(A)(2) provides, in pertinent part:
 {¶ 47} "(2) The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.
 {¶ 48} "* * *.
 {¶ 49} "The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court."
 {¶ 50} In this case, the motion for permanent custody was filed on April 12, 2002, and the hearing was held on August 29, 2002, more than 120 days later. The judgment entry was filed on November 15, 2002, some 217 days after LCCS filed the motion for permanent custody. Technically, the statutory time limits were not met. However, the statute, itself, makes clear that the failure of a trial court to comply with the time limitations does not affect the validity of any judgment issued pursuant to R.C. Chapter 2151. See R.C. 2151.414(A)(2). Courts interpreting this section have agreed that orders are not subject to attack when the court fails to comply with the time limitations set out in R.C. 2151.414(A)(2). See, e.g., In the Matter of: Mariah R. and Jordan R. (Dec. 14, 2001), L-01-1370; In the Matter of: Goodwin (Aug. 17, 1998), Licking App. No. 98-CA-3. For this reason, we find appellant's third assignment of error not well-taken.
 {¶ 51} In appellant's fourth assignment of error, he contends that the trial court erred in not conveying him for the hearing. A trial court has discretion to decide whether to proceed with a permanent custody hearing without having an incarcerated parent conveyed. State ex rel.Vanderlaan v. Pollex (1994), 96 Ohio App.3d 235, 236. Therefore, we will not reverse such a decision absent an abuse of discretion. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 52} We begin by noting that an individual does not have an absolute right to be present in a civil case to which he is a party. Inre Sprague (1996), 113 Ohio App.3d 274, 276; Mancino v. Lakewood (1987),36 Ohio App.3d 219, 221. However, we must also note that an individual has a "basic," "fundamental," and "essential" civil right to raise his or her own children. See Sprague, 113 Ohio App.3d at 276; In the Matter of:Dylan R., 6th Dist. No. L-02-1267, 2003-Ohio-69, at ¶ 21. Because of the competing interests involved in proceedings such as these, Ohio courts have applied a balancing test to determine whether a parent's due process rights are violated when the court proceeds with a hearing on a permanent custody motion without the parent's presence. Specifically, a court should balance the following factors: "(1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural safeguards." Sprague, 113 Ohio App.3d at 276, citing Mathewsv. Eldridge (1976), 424 U.S. 319, 335. We previously approved of the Ninth District's reasoning in a case construing these factors. According to the Ninth District, a parent's due process rights are not violated when: (1) the parent is represented at the hearing by counsel, (2) a full record of the hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition. In the Matter of LeoD., Deandre E., and Desandra E. (March. 15, 2002), Lucas App. No. L-01-1452, citing In re Robert F. (Aug. 20, 1997), Summit App. No. 18100.
 {¶ 53} In this case, as indicated earlier, the reason that appellant was not conveyed was because he was transferred and he did not inform his attorney of his whereabouts. Nonetheless, even assuming that appellant had informed his attorney of his transfer but was not allowed to be present, we still find that appellant's due process rights were not violated. First, appellant was represented at the hearing by counsel and a full record was made of the proceedings. Second, appellant indicated in his brief that, had he been present at the hearing, he could have presented "relevant evidence as to the issue of whether or not he could be reunified with his child within a reasonable time." Given the type of evidence appellant contends he could have offered, we see no reason why appellant could not have presented this testimony by deposition.[4]
Therefore, we find that appellant's due process rights were not violated when the trial court proceeded in his absence. See In the Matter of: LeoD., supra. Appellant's fourth assignment of error is found not well-taken.
 {¶ 54} In his fifth assignment of error, appellant contends that he was denied effective assistance of counsel. According to appellant, counsel was ineffective in: (1) representing both him and Joan when their interests diverged; (2) failing to secure his presence at the hearing; (3) failing to elicit any testimony on his behalf at trial and failing to cross-examine the witness; and (4) waiving opening and closing argument.
 {¶ 55} R.C. 2151.352 and Juv.R. 4(A) provide that children and their parents are entitled to an attorney for all proceedings under R.C. Chapter 2151 and have the right to appointed counsel if they are indigent. See, also, In the Matter of: M.L.R., 8th Dist. No. 80277,2002-Ohio-5958, at ¶ 12. The right to counsel in these cases naturally includes the right to effective counsel, and the test for ineffective assistance of counsel is the same in these cases as it is in criminal cases. In the Matter of: Baby Girl Doe, 6th Dist. No. L-02-1027, 2002-Ohio-4470, at ¶ 99, appeal denied (2002),97 Ohio St.3d 1425.
 {¶ 56} The Supreme Court of Ohio has held that courts should apply a two-part test to determine ineffective assistance claims. According to the Supreme Court:
 {¶ 57} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989),42 Ohio St.3d 136, at paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, citing State v. Lytle (1976), 48 Ohio St.2d 391;Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 58} The court must defer to the strong presumption that counsel's performance falls within the wide range of reasonable professional performance. Bradley, 42 Ohio St.3d at 142. Even if counsel's performance falls outside the objective standard of reasonable representation, the court shall not reverse unless counsel's ineffectiveness resulted in prejudice. Id. In order to show prejudice warranting reversal, the defendant must show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceeding would have been different. Id., quoting Strickland,466 U.S. at 694.
 {¶ 59} The Court in Bradley derived guidance from the Strickland decision on how to proceed with the two-part analysis for ineffective assistance claims. In Strickland, the United States Supreme Court stated:
 {¶ 60} "Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697, quoted in Bradley,42 Ohio St.3d at 143.
 {¶ 61} In this case, we shall move directly to the question of whether appellant was prejudiced by his counsel's alleged ineffectiveness. As the court noted, appellant was incarcerated at the time of the hearing. Exhibit 1 indicates that he will remain incarcerated until sometime in 2004. Pursuant to R.C. 2151.414(E)(12), this fact alone warrants the court in finding that Joseph could not be placed with appellant within a reasonable amount of time. Additionally, given the state of the entire record, we cannot say that the outcome of the hearing would have been any different had appellant had separate counsel and had counsel taken a more active role in the hearing. Finally, given the state of the entire record, we cannot say that, had counsel been able to arrange for appellant's presence, appellant's presence would have had any impact on the outcome of the hearing. Because we find that the alleged instances of ineffective assistance of counsel did not affect the outcome of the trial, appellant's fifth assignment of error is found not well-taken.
 {¶ 62} Upon due consideration, we find that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
Lanzinger and Singer, JJ., concur.
[1] Since Joan stipulated to LCCS' having permanent custody, Elam's testimony related primarily to appellant's compliance with the case plan. In our decision, even though the case plan addressed both Joan and appellant, we, too, will discuss only appellant's compliance with the plan.
[2] R.C. 2151.414(E)(7) provides a list of crimes that may be considered by the court if committed by the parent or parents. Appellee has not alleged that appellant committed any of these crimes.
[3] Exhibit 1, which was admitted at the hearing, indicated that on July 25, 2002, appellant received two consecutive 12-month sentences for failure to appear, making him unavailable to parent Joseph until July 2004.
[4] Appellant did not present any deposition testimony for the reasons stated above. However, the fact that appellant could have presented his testimony by way of deposition militates in favor of finding that appellant's absence did not violate his due process rights.