DECISION AND JUDGMENT ENTRY
{¶ 1} The matter is before the court on appeal of the Lucas County Court of Common Pleas Juvenile Division's January 14, 2004 judgment terminating the parental rights of appellant, Jesse P., and awarding permanent custody of his minor children, Jesse P. and Jay P., to Lucas County Children's Services ("LCCS"). For the following reasons, we affirm the trial court's judgment.
 {¶ 2} Appellant, Jesse P., is the natural father of Jesse P., born August 1997, and Jay P., born May 1998. On July 31, 1998, LCCS filed a complaint in dependency and neglect and motion for shelter care hearing. The complaint alleged that appellant and wife, Joan P., now deceased, visited their son, Jay, born three months premature, approximately four to five times during his three-month hospitalization. Jay had various health concerns and was being fed through a naso-gastric tube; neither parent demonstrated the ability to feed him. The complaint also alleged that the couple had a history of domestic violence, marijuana was found growing in their basement, appellant was not in compliance with the terms of his probation, and the family did not have stable housing.
 {¶ 3} On August 6, 1998, following the shelter care hearing, temporary custody of Jesse and Jay was awarded to LCCS. Jesse and Jay were placed in the home of their maternal grandparents, Larry and Barbara A. The original case plan, filed September 1, 1998, had a goal of reunification of the family by early 1999. The plan required that the parents attend parenting classes and domestic violence counseling and obtain drug and alcohol assessments. Appellant was to be assessed for anger management treatment.
 {¶ 4} On October 22, 1998, the court adjudicated Jesse and Jay dependent and neglected children. The amended case plan, filed on December 8, 1998, changed the plan's goal from reunification with the parents to permanent alternative placement, excluding adoption.
 {¶ 5} Effective February 9, 1999, and journalized on March 15, 1999, legal custody of Jesse and Jay was awarded to Larry and Barbara A. On May 15, 2003, LCCS was awarded temporary custody of Jesse and Jay and Larry and Barbara A.'s legal custody was terminated. LCCS moved the court for temporary custody in order to facilitate Larry and Barbara A.'s adoption of Jesse and Jay.
 {¶ 6} On July 8, 2003, LCCS filed a motion for permanent custody and a hearing on the motion was set for November 18, 2003. On September 15, 2003, appellant, who was incarcerated, filed a motion for an order conveying him to the Lucas County Juvenile Justice Center to testify at the hearing. The motion was denied; appellant's objections to the magistrate's decision were also denied.
 {¶ 7} At the November 18, 2003 hearing, the following testimony was presented. Larry A. testified that the last time appellant had visited the children was somewhere around July-September 1999. Larry testified that appellant continuously missed his scheduled supervised visitations so they were eventually cancelled. Larry stated that since 1998, he had received approximately $100 in support for the children; the amount was garnished from appellant's paycheck. Larry testified that the children received nothing from appellant for birthdays or for Christmas. The children's paternal grandmother, uncle, and aunt had visited on occasion and brought the children gifts.
 {¶ 8} Larry testified regarding the domestic violence incidents between Joan (his daughter) and appellant. Larry testified that the disputes continued throughout their marriage.
 {¶ 9} Barbara A. testified next. Barbara testified that the last time Jesse and Jay saw appellant was in 2001, at a variety store. On that date, appellant and Joan observed Barbara and the children going into the store and followed them inside. After she had finished shopping, Barbara and the children got in her car and left.
 {¶ 10} Barbara recounted incidents where she observed Joan with black eyes, bruises, cut lips, and handprints on her arm; she also witnessed appellant pushing Joan while she was pregnant. Barbara testified that the domestic violence continued until Joan's death.
 {¶ 11} As to Jesse and Jay, Barbara testified that she and Larry wished to adopt them. Barbara stated that Jesse has been diagnosed as ADHD and is taking medication and that Jay was being evaluated for ADHD and is taking medication for allergies. Barbara testified that both children were going to counseling for emotional problems relating to their mother's death.
 {¶ 12} Barbara testified that Jesse came to live with them when he was 11 months old and that Jay came directly from the hospital. Barbara stated that from birth until Jesse came to their home he had lived in three different places. Barbara stated that from when Jesse was 11 months old until the date of the hearing (Jesse was six) appellant had seen him approximately seven times.
 {¶ 13} Appellant's counsel renewed the objection to the court's denial of the motion to convey. Appellant's counsel did admit into evidence a letter evidencing appellant's desire to regain custody of his children and various certificates that appellant received in prison for attending AA/NA and self-help classes. Appellant also had two family members testify on his behalf.
 {¶ 14} Marty P., appellant's brother, testified that appellant was a very loving father to Jesse; he changed his diapers and made sure he was fed. He stated that appellant and Joan argued, but it was "like any other married couple."
 {¶ 15} Marty testified that he has visited appellant in prison at least once a month for the past two years and that appellant is a "different" person. Appellant had been taking various classes in prison, including parenting classes. Marty stated that appellant really wants to be a part of his children's lives. Marty stated that once appellant was released from prison, he and his wife would help appellant in any way they could and would provide childcare and transportation.
 {¶ 16} Appellant's sister, Christina F., was the final witness to testify. Christina testified that appellant and Joan argued a lot but that they loved each other very much. Christina stated that she had observed appellant playing with, feeding, and diapering Jesse.
 {¶ 17} Since his recent imprisonment, Christina stated that she has noticed a big change in appellant. Appellant has talked about going to school and has made inquiries into getting a job. Appellant talks constantly about his children and asks about their welfare. Christina testified that when appellant is released from prison he would live with her, her husband, and her young son. She stated that she would be willing to help appellant with the care of his children.
 {¶ 18} At the close of the evidence, the trial court found that LCCS had proven by clear and convincing evidence that appellant essentially abandoned the children through non-support and his failure to have any meaningful contact with them. The court also noted appellant's past violent and criminal acts. The court found that appellant's recent intention to change his lifestyle comes too late to benefit the children. In the court's January 14, 2004 judgment entry, the court indicated that its findings were pursuant to R.C. 2151.353(A)(4) and R.C.2151.414(E)(1), (4), (10), (14), and (16).
 {¶ 19} Appellant now appeals and sets forth the following three assignments of error:
 {¶ 20} "I. The trial court's grant of permanent custody was not supported by clear and convincing evidence and the determination that LCCSB made reasonable efforts to prevent the removal of the minor child was in error and prejudiced the appellant.
 {¶ 21} "II. The trial court erred to the prejudice of the appellant when it found that it was in the child's best interest that the plaintiff-appellee be granted permanent custody of the minor child.
 {¶ 22} "III. The trial court improperly held the permanent custody hearing without conveying the appellant, Jesse P[.] to be present."
 {¶ 23} Appellant's first and second assignments of error argue that the trial court's judgment was not supported by clear and convincing evidence; therefore, we shall jointly address them.
 {¶ 24} R.C. 2151.353(A) provides, in relevant part:
 {¶ 25} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *.
 {¶ 26} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. * * *."
 {¶ 27} R.C. 2151.414(D) lists the factors that the court shall consider in order to determine the best interests of the child. That section provides:
 {¶ 28} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353
[2151.35.3] or division (C) of section 2151.415[2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} The factors in R.C. 2151.414(E), which were relied upon by the trial court provide:
 {¶ 35} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all the relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 36} "(1) Following placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents the substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 37} "* * *.
 {¶ 38} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 39} "* * *.
 {¶ 40} "(10) The parent has abandoned the child.
 {¶ 41} "* * *.
 {¶ 42} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 43} "* * *.
 {¶ 44} "(16) Any other factor the court considers relevant."
 {¶ 45} As set forth in the above-quoted statutory sections, the trial court's findings must be supported by clear and convincing evidence. The Ohio Supreme Court has held that clear and convincing evidence is:
 {¶ 46} "* * * that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 47} In support of appellant's first and second assignments of error, he contends that contrary to the findings of the court, appellant completed some of the services that he was referred to by LCCS and he visited his children "on some occasions." Appellant further contends that the testimony of his family members demonstrates that appellant desires to care for his children.
 {¶ 48} Upon review of the record in this case, we find that appellant's arguments are not persuasive. Even assuming that appellant did complete the substance abuse assessment, he failed to complete parenting and domestic violence classes and did not seek an anger management assessment. Testimony presented at the hearing demonstrates that appellant's supervised visits with Jesse and Jay were eventually cancelled because he failed to attend. Further, though appellant was repeatedly incarcerated from the time his children were removed from his home until the time of the hearing, the testimony established that during the months he was not incarcerated he did not visit his children. Appellant failed to acknowledge holidays, or the boys' birthdays or even telephone to inquire of their well-being. Thus, the court's findings under R.C. 2151.414(E) are supported by competent, credible evidence. Further, under R.C. 2151.414(D), the court has demonstrated that it is in Jesse and Jay's best interests to be adopted by their maternal grandparents who have already adopted a younger sibling and with whom they have lived since 1998. Accordingly, appellant's first and second assignments of error are not well-taken.
 {¶ 49} In his third assignment of error, appellant contends that the trial court's refusal to convey him from prison in order to testify at the hearing prejudiced his case and prevented him from defending the motion for permanent custody. A trial court has discretion to decide whether to proceed with a permanent custody hearing absent an incarcerated parent. State ex rel.Vanderlaan v. Pollex (1994), 96 Ohio App.3d 235, 236. Thus, an appellate court will not reverse a trial court's decision absent an abuse of that discretion.
 {¶ 50} This court has previously addressed the same argument raised by appellant in a prior appeal. In re Joseph P., 6th
Dist. No. L-02-1385, 2003-Ohio-2217, states:
 {¶ 51} "We begin by noting that an individual does not have an absolute right to be present in a civil case to which he is a party. In re Sprague (1996), 113 Ohio App.3d 274, 276,680 N.E.2d 1041; Mancinco v. Lakewood (1987), 36 Ohio App.3d 219,221, 523 N.E.2d 332. However, we must also note that an individual has a `basic,' `fundamental,' and `essential' civil right to raise his or her own children. See Sprague,113 Ohio App.3d at 276; In the Matter of Dylan R., 6th Dist. No. L-02-1267, 2003-Ohio-69, at ¶ 21. Because of the competing interests involved in proceedings such as these, Ohio courts have applied a balancing test to determine whether a parent's due process rights are violated when the court proceeds with a hearing on a permanent custody motion without the parent's presence. Specifically, a court should balance the following factors: `(1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural safeguards.' Sprague, 113 Ohio App.3d at 276, citingMathews v. Eldridge (1976), 424 U.S. 319, 335, 47 L.Ed.2d 18,96 S.Ct. 893. We previously approved of the Ninth District's reasoning in a case construing these factors. According to the Ninth District, a parent's due process rights are not violated when: (1) the parent is represented at the hearing by counsel, (2) a full record of the hearing is made, (3) any testimony that the parent wishes to present could be presented by deposition.In the Matter of Leo D., Deandre E., and Desandra E. (March 15, 2002), Lucas App. No. L-01-1452, 2002-Ohio-1174, citing In reRobert F. (Aug. 20, 1997), Summit App. No. 18100, 1997 Ohio App. LEXIS 3746."
 {¶ 52} In the instant case, appellant was represented by counsel at the hearing; counsel admitted into evidence a letter authored by appellant and documents in support of his position. Appellant's brother and sister testified on his behalf. A full record was made of the proceedings. Any additional testimony that appellant wished to submit could have been presented by deposition. Accordingly, we find that appellant's due process rights were not violated when the court proceeded in his absence. Appellant's third assignment of error is not well-taken.
 {¶ 53} On consideration whereof, we find that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Singer, J., concur.