[Cite as *In re Ang.O.*, 2018-Ohio-5195.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Ang.O., N.O., Ant.O.

Court of Appeals No. L-18-1161

Trial Court No. JC 16259053

**<u>DECISION AND JUDGMENT</u>**

Decided:  December 21, 2018

* * * * *

Christopher S. Clark, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** Appellant-father, B.C., appeals the June 26, 2018 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated his parental rights and granted permanent custody of N.O. to Lucas County Children Services ("LCCS").

**{¶ 2}** N.O. was born in 2014. LCCS was awarded temporary custody of N.O. and her siblings in November 2016, following its complaint in dependency and neglect. The complaint stated that mother had legal custody of her four children. The complaint alleged that Nev.A.'s father was A.A., and that A.O. was Ang.O., N.O., and Ant.O.'s father.[1] The complaint alleged that mother was not following through with the medical needs of the children; there were allegations of domestic violence in the home dating back to April 2016; and allegations that the children were being left with inappropriate caregivers. The complaint indicated that LCCS believed that the two named fathers were incarcerated. A case plan with a goal of reunification was filed.

**{¶ 3}** Three children were placed in foster care with the eldest, Nev.A., going with her maternal great-grandmother. Ultimately, the three younger children were placed in the same foster home.

**{¶ 4}** On September 15, 2017, LCCS filed a motion for permanent custody. The motion claimed that mother was not following through with case plan requirements and services. The identified fathers had not maintained contact with the caseworker or the children.

**{¶ 5}** While the motion was pending, on October 19, 2017, appellant, through counsel, made an oral motion for genetic testing to establish paternity of N.O. On the date of the motion, appellant was incarcerated in New York. The testing was ordered and

---

[1] Nev.A., Ang.O. and A.O. are not subjects in this appeal.

on February 12, 2018, the trial court acknowledged that the DNA results confirmed appellant's paternity as to N.O. Reflecting this finding, LCCS filed an amended motion for permanent custody on March 12, 2018.

{¶ 6} L.C., N.O.'s paternal grandmother who had visited with her on multiple occasions, filed a motion to intervene in the action on August 7, 2017. Following appellant's establishment of paternity in March 2018, L.C. filed an amended motion to intervene and a motion for custody of N.O.

{¶ 7} On April 16, 2018, appellant filed a motion to continue the custody hearing until his release from incarceration or, alternatively, a motion to convey appellant for the hearing. On May 1, 2018, the motion was denied.

{¶ 8} A hearing on LCCS' motion for permanent custody and L.C.'s motion for legal custody was held May 29 and 30, 2018. At the start of the hearing, mother, represented by counsel, consented to LCCS receiving permanent custody of the three younger children; she executed a permanent custody agreement and waiver of rights form. Attorneys for the fathers of Ang.O. and Ant.O. were permitted to withdraw due to their inability to contact their clients. Appellant was represented by counsel.

{¶ 9} LCCS presented the testimony of the family's caseworker and the children's foster parent. Relevant to this appeal, the caseworker testified that in December 2016, appellant wrote her a letter from prison stating that his mother had permission to speak with her. The caseworker stated that during LCCS' involvement, appellant had no

3.

contact with N.O.  The caseworker testified that she believed it to be in N.O.'s best interests that permanent custody be awarded to LCCS.

{¶ 10} The caseworker was cross-examined by appellant's attorney regarding the possibility of placement of N.O. in appellant's mother's house and the effect of permanent custody being awarded to LCCS on N.O.'s ability to have a relationship with the grandmother, father, and half-siblings.  The caseworker acknowledged the possibility that it could be foreclosed.

{¶ 11} Foster parent, A.W., testified that N.O. had been in her care since February 2017, and that she has had no contact with appellant.  A.W. stated that if LCCS was awarded permanent custody of the three children, she wished to adopt them.

{¶ 12} Grandmother, L.C., testified that she became aware of N.O. in December 2016, upon receiving a call from appellant while he was incarcerated.  Appellant asked his mother to check on N.O. after receiving news that she was in a coma after a television fell on her.  During cross-examination, however, L.C. was questioned about prior testimony that N.O. was injured in March or April of 2016; L.C. maintained that she first learned of N.O. when she was injured.

{¶ 13} L.C. was questioned about appellant's attempts to establish paternity as to N.O.  She stated that appellant and the mother had purchased a DNA kit from a drugstore and that he shared the results which confirmed that he was N.O.'s father.  L.C. testified that she did not know when the test was done.  L.C. responded in the negative to

4.

questions of whether appellant had ever established paternity through the court system, that he ever paid child support for N.O., or that he ever visited N.O.

{¶ 14} L.C. further stated that she had custody of one of appellant's children and shared parenting of another child of his. She testified that when appellant is released from prison he would be on probation for 16 months. L.C. testified that appellant would not be returning to Toledo, he was planning on resuming his job in New York.

{¶ 15} Finally, the GAL testified that she was appointed in December 2016. As to N.O., the GAL testified that N.O. was "terrified" when she first met her because she was afraid the GAL was taking her away from her siblings. The GAL stated that N.O. is happy now and feels safe in her home. The GAL recommended that LCCS be awarded permanent custody of the three children. During cross-examination, the GAL stated that appellant did send her a letter expressing his wish that his mother be awarded custody of N.O. She agreed that a relationship between a grandchild and grandparent is important.

{¶ 16} On June 26, 2018, the trial court granted LCCS' motion for permanent custody; L.C.'s motion was denied. This appeal followed with appellant raising three assignments of error for our review:

> I. The trial court erred in terminating [B.C.]'s parental rights as a matter of law.
>
> II. The decision of the trial court in terminating the parental rights of the appellant-father, and awarding permanent custody to Lucas County Children Services is against the manifest weight of the evidence.

5.

III. The trial court erred in terminating the parental rights of the appellant-father, and awarding permanent custody to Lucas County Children Services, based upon a determination that permanent custody is in the child's best interest. [O.R.C.§2151.414(B)(2)]

{¶ 17} Appellant's first assignment of error challenges the trial court's denial of his motion to continue the hearing until his release from prison. The trial court has discretion to decide whether to proceed with a permanent custody hearing in the absence of an incarcerated parent. *State ex rel. Vanderlaan v. Pollex*, 96 Ohio App.3d 235, 236, 644 N.E.2d 1073 (6th Dist.1994). However, an individual has a "basic," "fundamental," and "essential" civil right to raise his or her own children. *See In re Sprague*, 113 Ohio App.3d 274, 276, 680 N.E.2d 1041 (12th Dist.1996); *In the Matter of: Dylan R.*, 6th Dist. Lucas No. L-02-1267, 2003-Ohio-69, ¶ 21. Recognizing this important right, when an incarcerated parent is not transferred to a permanent custody hearing, this court has repeatedly held that "a parent's due process rights are not violated when: (1) the parent is represented at the hearing by counsel, (2) a full record of the hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition." *In re Joseph P.*, 6th Dist. Lucas No. L-02-1385, 2003-Ohio-2217, ¶ 52; *In re Jesse P.*, 6th Dist. Lucas No. L-04-1028, 2004-Ohio-3801, ¶ 51; *In re Johnny H.*, 6th Dist. Lucas No. L-06-1044, 2007-Ohio-748, ¶ 21.

{¶ 18} In the present case, appellant was represented by counsel at the hearing; counsel vigorously cross-examined the witnesses. A full transcript was made of the

6.

proceedings and has been reviewed by this court. Further, appellant's wish that his mother be awarded custody was also before the court. Additionally, although appellant claimed he could be released in August 2018, the expiration of his term was in 2019. LCCS' motion had been pending since September 2017, and the children were in need of a permanent home. Accordingly, we find that the trial court did not err when it denied appellant's motion for a continuance. Appellant's first assignment of error is not well-taken.

{¶ 19} Appellant's second and third assignments of error are related and will be addressed jointly. We first note that "[a] trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. As the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 20} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child:

7.

The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 21} R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of 16 factors are met. Here, as to appellant the trial court found that R.C. 2151.414(E)(4), (E)(10), (E)(12) and (E)(16) applied. Those sections provide:

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(10) The parent has abandoned the child.

* * *

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not

be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

* * *

(16) Any other factor the court considers relevant.

{¶ 22} In reaching its decision, the trial court reasoned that father demonstrated a lack of commitment toward N.O. despite knowledge that she was his biological child. The court found that appellant had taken a DNA test prior to his incarceration but failed to follow through with the court or child support agency until after LCCS' permanent custody motion had been filed. At the time of trial he was still incarcerated and even assuming an early release in August 2018, he had a 16-month probation obligation. In addition, appellant's mother, L.C., testified that following his release from incarceration, appellant intended on remaining in New York where he had employment. Thus, we hold that the trial court's findings under R.C. 2151.414(E) are not against the manifest weight of the evidence.

{¶ 23} We further find that the court did not err in finding that the award of permanent custody to LCCS was in N.O.'s best interests. N.O. had no relationship with appellant and had been removed from her mother in November 2016. Since February 2017, N.O. and two of her half-siblings had been living together in a prospective adoptive placement. The court concluded that the children needed a secure, permanent placement.

9.

**{¶ 24}** Based on the foregoing, we find that the weight of the evidence supports the trial court's decision to award permanent custody to LCCS.  Appellant's second and third assignments of error are not well-taken.

**{¶ 25}** On consideration whereof, this court finds that substantial justice was done the party complaining. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.