JOURNAL ENTRY and OPINION
{¶ 1} Appellant T.L. appeals an order of the juvenile court granting permanent custody of her four children to the Cuyahoga County Department of Children and Family Services (CCDCFS). She assigns the following error for our review:
 {¶ 2} "I. The trial court erred in granting permanent custody since (1) none of the circumstances set forth in R.C. 2151.414
were proven by clear and convincing evidence and (2) the judgment is against the manifest weight of the evidence."
 {¶ 3} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 4} On June 21, 2000, T.L.'s minor children, X.L., W.L., A.L., and D.L. were removed from her home. On June 23, 2000, CCDCFS filed a complaint alleging T.L. left the children home alone for three days without supervision, and CCDCFS requested a disposition of permanent custody of the children. The trial court dismissed the case prior to a hearing on the merits.
 {¶ 5} On October 5, 2000, CCDCFS filed a new complaint alleging T.L. had an extensive history with CCDCFS. Also, T.L. had a history of substance abuse, which prevented her from providing adequate care for her children. Additionally, T.L. left her children without food for three days while her whereabouts remained unknown. Further, T.L. admitted to her social worker she was on a cocaine binge for the three days she was missing. Finally, the alleged fathers have failed to establish paternity and provide no care or support for the children.
 {¶ 6} After a hearing, the trial court found the minor children were dependent and neglected, and awarded temporary custody to CCDCFS. The children were subsequently placed in foster care. On September 4, 2002, CCDCFS filed a motion to modify temporary custody of T.L.'s minor children to permanent custody. On September 3, 2003, a trial on the motion was held.
 {¶ 7} At trial, Torie Saunders, a social worker with CCDCFS, testified when T.L. was first assigned to her, T.L. was abusing cocaine. Saunders developed a case plan to effect reunification of T.L. with her children. The case plan included such objectives as substance abuse assessment and treatment, aftercare treatment, basic needs, and obtaining consistent employment.
 {¶ 8} Saunders stated by July 2002, T.L. had substantially complied with the case plan and CCDCFS was prepared to recommend reunification. T.L. completed the treatment program, secured employment, and the children were visiting with her on a weekly basis for two or three days at a time.
 {¶ 9} Thereafter, T.L. tested positive for cocaine and lost both her job and her home. CCDCFS again referred her for substance abuse assessment and treatment and required that she obtain new employment.
 {¶ 10} T.L. again went through the substance abuse assessment and a drug treatment program. The visits with the children were reduced to biweekly. During the visits, T.L. had the most interaction with the two oldest children, who are not part of this appeal. She had little or no interaction with the younger children, who are the subject of this appeal. Most discussions involved T.L. promising the children they would be home soon, a topic the agency preferred not be discussed, because it led to confusion and could be detrimental to the children. During one visit, T.L. talked on her cell phone for an hour.
 {¶ 11} Saunders also stated T.L. gave the agency the names of four men she alleged to be the fathers of one or more of her children. However, paternity tests determined none of the men fathered any of T.L.'s children.
 {¶ 12} Saunders also testified X.L. and W.L. were in foster care with parents who wanted to adopt them. However, X.L. had anger management issues and W.L. had behavioral problems. A.L. and D.L. were with the same foster parents and there had been no behavioral issues.
 {¶ 13} Finally, Saunders testified T.L. again tested positive for cocaine in the early part of 2003, prompting CCDCFS to file for permanent custody of the children.
 {¶ 14} Guardian Ad Litem Judith Lane recommended the court grant permanent custody of the children to CCDCFS. She stated X.L. and W.L. are in a permanent placement and have been thriving. She also stated A.L. and D.L. were recently moved to a foster home together and based on their young age, permanent custody would be in their best interest.
 {¶ 15} T.L. did not attend the trial, though the record reveals she was notified of the hearing.
 {¶ 16} At the conclusion of the trial, the court awarded permanent custody to CCDCFS. T.L. now appeals.
 {¶ 17} In her sole assigned error, T.L. argues the trial court's decision is not supported by clear and convincing evidence. We disagree.
 {¶ 18} Our review of a custody determination by the juvenile court begins with the recognition that the court's exercise of discretion should be accorded "the utmost respect,"[1]
taking into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[2] "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment."[3]
 {¶ 19} R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The statute requires the court to find, by clear and convincing evidence, (1) one of the factors enumerated in R.C. 2151.414(B)(1) to exist, and (2) an award of permanent custody to be in the best interest of the child.
This statute states:
{¶ 20} "(B)(1) Except as provided in division (B)(2) of thissection, the court may grant permanent custody of a child to amovant if the court determines at the hearing held pursuant todivision (A) of this section, by clear and convincing evidence,that it is in the best interest of the child to grant permanentcustody of the child to the agency that filed the motion forpermanent custody and that any of the following apply:
 {¶ 21} "(a) The child is not abandoned or orphaned or has notbeen in the temporary custody of one or more public childrenservices agencies or private child placing agencies for twelve ormore months of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed with eitherof the child's parents within a reasonable time or should not beplaced with the child's parents.
 {¶ 22} "(b) The child is abandoned.
 {¶ 23} "(c) The child is orphaned, and there are no relativesof the child who are able to take permanent custody.
 {¶ 24} "(d) The child has been in the temporary custody of oneor more public children services agencies or private childplacing agencies for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999."
 {¶ 25} Moreover, to make a determination in accordance with R.C. 2151.414(B)(1)(a) of whether a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, R.C. 2151.414(E) requires the court to consider all relevant evidence. It states:
{¶ 26} "(E) In determining * * * whether a child cannot beplaced with either parent within a reasonable period of time orshould not be placed with the parents, the court shall considerall relevant evidence. * * *
{¶ 27} "(1) Following the placement of the child outside thechild's home and notwithstanding reasonable case planning anddiligent efforts by the agency to assist the parents to remedythe problems that initially caused the child to be placed outsidethe home, the parent has failed continuously and repeatedly tosubstantially remedy the conditions causing the child to beplaced outside the child's home. In determining whether theparents have substantially remedied those conditions, the courtshall consider parental utilization of medical, psychiatric,psychological, and other social and rehabilitative services andmaterial resources that were made available to the parents forthe purpose of changing parental conduct to allow them to resumeand maintain parental duties;
 {¶ 28} "(2) Chronic mental illness, chronic emotional illness,mental retardation, physical disability, or chemical dependencyof the parent that is so severe that it makes the parent unableto provide an adequate permanent home for the child * * *."
 {¶ 29} In the instant case, the trial court made the requisite findings to award permanent custody of the children to CCDCFS. First, any one condition of R.C.2151.414(B)(1)(a)-(d) must be satisfied. At the conclusion of trial on September 3, 2003, the children had been in the temporary custody of CCDCFS for more than three years, having been taken into custody on June 21, 2000. Thus, R.C.2151.414(B)(1)(d), which requires the children to be in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period was satisfied.
 {¶ 30} Second, the trial court, having satisfied the first prong of the analysis, could proceed to a best-interest-of-the-children analysis. Here, the trial court is required to consider all relevant factors including, but not limited to those enumerated in R.C. 2151.414(D). The record reveals the agency established a case plan to reunify T.L. with her children. Initially, it appeared T.L was benefitting from the program, secured employment, and had a house large enough to accommodate all her children. Unfortunately, she relapsed into cocaine use, lost her job and home, and the agency had to make a second referral for substance abuse treatment.
 {¶ 31} During T.L.'s second attempt to satisfy the case plan, CCDCFS established she visited with the children only on a biweekly basis. It appears these visits were not fruitful, because she interacted only with the two older children, leaving the younger ones to talk among themselves. Additionally, throughout the time the children have been in the temporary custody of the agency, T.L. has been unable to identify the father of her children, thus foreclosing the option of the court awarding custody to a biological parent.
 {¶ 32} Her most recent relapse into cocaine use is further evidence T.L. has failed to benefit from the repeated reunification efforts. Finally, her failure to attend the trial is troubling. By appearing at the trial, the mother could have demonstrated her interest in having the children return home and buttress her argument that she had remedied the situation.
 {¶ 33} We conclude the trial court had sufficient credible evidence before it to satisfy the requirements of the statute. The award of permanent custody to CCDCFS was proper. Accordingly, we overrule T.L.'s sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and Gallagher, J., Concur.
[1] See In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, citing Reynolds v. Goll (1996),75 Ohio St.3d 121, 124; see, also, In re Awkal (1994), 95 Ohio App.3d 309,316.
[2] Campbell, citing Goll.
[3] In re Pieper Children (1993), 85 Ohio App.3d 318, 330.