JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother appeals from the judgment of the Common Pleas Court, Juvenile Division, granting permanent custody of her child, D.W.,[1] to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm.
 {¶ 2} In June 2003, CCDCFS refiled a complaint for neglect and permanent custody of D.W. CCDCFS alleged that appellant had a substance abuse problem, did not have stable housing or any source of income with which to provide for D.W., and was currently incarcerated, as was D.W.'s father. The trial court granted predispositional temporary custody of D.W. to CCDCFS. Appellant and T.A., D.W.'s father, subsequently stipulated to the complaint, as amended.
 {¶ 3} Neither parent appeared for the dispositional hearing, although the record reflects that both parents received notification of the date and time of the hearing.
 {¶ 4} Sidney Gaskins, appellant's caseworker at CCDCFS, testified that D.W. was born two months premature on March 4, 2002, and spent the next two months in the hospital due to complications related to her premature birth. During this time, appellant visited D.W. only sporadically, although she was permitted unlimited visitation. Upon her release from the hospital, CCDCFS removed D.W. from appellant's care because appellant was unable to provide an adequate home for her, and because she had failed to remedy the conditions which had led to the prior removal of her two other children.
 {¶ 5} Gaskins testified that CCDCFS had developed a case plan for appellant as early as 2000, but, although she was referred for services numerous times, she did not complete any of the objectives of the plan. The case plan developed for appellant and T.A. required both to address their substance abuse issues, obtain employment, demonstrate the ability to provide for their own and D.W.'s basic needs, such as housing, food, and clothing, clear any outstanding warrants and remain free of involvement with law enforcement officials, and address issues of emotional stability through counseling.
 {¶ 6} Neither appellant nor T.A. showed any interest, however, in working on the case plan. Although appellant completed three separate drug assessments, she failed each time to attend the recommended outpatient drug treatment program. She likewise failed to follow up on numerous referrals from Gaskins for parenting education, housing and employment assistance. Although Gaskins referred appellant for job training at a center that was located within walking distance, appellant never followed up on the referral. Similarly, although Gaskins made arrangements to take appellant to the Cuyahoga Metropolitan Housing Authority to complete an application for housing, when Gaskins arrived at appellant's home to pick her up, appellant was not there. Likewise, although Gaskins made three referrals for a psychological evaluation, appellant did not follow up on any of the referrals.
 {¶ 7} Similarly, although T.A. told Gaskins that he was working, he refused to provide her with pay stubs to verify his employment, and, one week prior to the hearing, finally admitted to Gaskins that he was not employed. He also refused any random drug testing. According to Gaskins, the only objective of the case plan that had been met as of the dispositional hearing was that T.A. had established paternity of D.W.
 {¶ 8} Gaskins characterized appellant's relationship with D.W. as "somewhat nonexistent." She testified that upon D.W.'s release from the hospital, she was placed with appellant's cousin, who lived only two houses away from appellant. Arrangements were made for two-hour visits by appellant. Despite the proximity of her daughter, however, appellant either missed the visits altogether, or showed up late and left early, sometimes staying only 15 minutes.
 {¶ 9} In July 2003, appellant pled guilty to drug possession and was sentenced to six months incarceration. According to Gaskins, although appellant had various services relevant to her case plan available to her during her incarceration, she did not pursue any of the services. When she was released in December 2003, appellant telephoned Gaskins once, but then never contacted her again. Likewise, she did not resume consistent visits with D.W.
 {¶ 10} Shanene Lewis, an intern at Women's Re-Entry, an organization that provides counseling and other services to women recently released from prison, testified for appellant. According to Lewis, appellant contacted her approximately one month prior to the hearing and told her that she "really wanted to try now" to get D.W. back. Lewis testified, however, that appellant had already missed a scheduled appointment with her. She testified further that when she offered to help appellant obtain placement in a transitional housing program which included job training, appellant declined the offer because of the accompanying curfew and drug use restrictions. Gaskins similarly testified that appellant had turned down the transitional housing program.
 {¶ 11} The trial court subsequently entered an order granting permanent custody of D.W. to CCDCFS. Appellant appealed, raising three assignments of error for our review.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 12} In her first assignment of error, appellant contends that the trial court erred in determining there was clear and convincing evidence supporting its decision to award permanent custody of D.W. to CCDCFS.
 {¶ 13} A trial court's decision to award permanent custody will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Adoption of Lay (1986), 25 Ohio St.3d 41, 42. Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
 {¶ 14} In this case, the termination of appellant's parental rights is governed by R.C. 2151.353(A)(4), which provides that the court may commit a child to the permanent custody of a public children services agency if it determines by clear and convincing evidence,[2] in accordance with R.C. 2151.414(E), that the child cannot or should not be placed with either parent in a reasonable time, and that pursuant to R.C. 2151.414(D), permanent custody is in the best interest of the child.
 PLACEMENT OF D.W. WITH EITHER PARENT WITHIN A REASONABLE TIME {¶ 15} R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot or should not be placed with either parent within a reasonable period, including any factor the court considers relevant. In its journal entry awarding permanent custody of D.W. to CCDCFS, the trial court found that D.W. should not be placed with either parent because the parents had failed, for over six months, to remedy the conditions that had caused D.W. to be placed outside her home, had failed to provide basic necessities for her, had failed to visit or communicate with her, and had shown an unwillingness to provide an adequate permanent home for her. See R.C. 2151.414(E)(1) and (4). The record more than adequately supports these findings.
 {¶ 16} The record reflects that CCDCFS developed a case plan for appellant to enable D.W. to be returned to her custody and provided numerous services to assist her in meeting the objectives of her case plan. As of the date of the hearing, however, more than two years after D.W. had been placed in the custody of CCDCFS, appellant had not completed any of the objectives of the case plan. Although she completed three drug assessments, she never attended the recommended outpatient drug treatment programs. Likewise, she did not follow through with any of the numerous referrals for parenting education, housing, and job training. Indeed, although appellant could have participated in a transitional housing program which also offered job training, she refused to do so because of the lifestyle restrictions imposed by the program. Moreover, although she was referred three times for a psychological evaluation, she never completed an evaluation. Even though she had access to services to complete her case plan while she was incarcerated, appellant failed to avail herself of this opportunity. On this record, it is apparent that during the entire time that D.W. was in the custody of CCDCFS, appellant did nothing to comply with her case plan requirements or to address her drug problem.
 {¶ 17} The record also reflects that, from the time of D.W.'s removal, appellant was inconsistent in visiting her. Despite the fact that D.W. lived with a relative only two houses away from appellant and appellant could visit her for up to two hours, she often showed up late for the visits, and often left after only 15 minutes. Many times, she simply did not show up for visits. Gaskins' characterization of appellant's relationship with D.W. as "nonexistent" seems particularly apt in light of appellant's failure to attempt to establish any relationship with her. D.W.'s guardian ad litem testified that D.W. was "well-bonded" with her new family, however. Moreover, the guardian ad litem testified that D.W. "does not recognize [appellant] as her mother."
 {¶ 18} Furthermore, appellant failed to appear for the dispositional hearing, even though she knew the date and time of the hearing. As this court recognized in In re A.L., Cuyahoga App. No. 83997, 2004-Ohio-6096, at ¶ 32, a parent's "failure to attend the trial is troubling. By appearing at the trial, the mother could have demonstrated her interest in having the children return home and buttress her argument that she had remedied the situation." As CCDCFS argues in its brief, "appellant's failure to appear for the dispositional hearing speaks volumes regarding her lack of commitment to D.W."
 {¶ 19} In light of this evidence, the trial court properly determined that D.W. cannot or should not be placed with either parent within a reasonable time. Accordingly, the trial court was then required to make a "best interest" determination pursuant to R.C. 2151.414(D).
 BEST INTEREST DETERMINATION {¶ 20} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; 2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and 5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. Although the trial court is required to consider each of the factors in making its permanent custody determination, only one of these factors needs to be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942. Moreover, the statute does not require the court to list those factors or conditions it found applicable before making its determination that permanent custody is in the child's best interest. Inre I.M., Cuyahoga App. Nos. 82669 82695, 2003-Ohio-7069, at ¶ 27.
 {¶ 21} The evidence at trial indicated that D.W. had been in the custody of CCDCFS since her birth and had never lived with appellant. The evidence further demonstrated that D.W.'s relationship with appellant is "nonexistent." In contrast, the guardian ad litem testified that D.W. "is in an adoptive home. She's very well-bonded to the family. She's doing well in school, in socialization, and in her relationship with that family." Indeed, the guardian ad litem recommended that an order of permanent placement with CCDCFS would be in D.W.'s best interest. See R.C. 2151.414(D)(1), (2) and (3).
 {¶ 22} With respect to the need for a legally secure permanent placement and whether such placement can be achieved without a grant of permanent custody pursuant to R.C. 2151.414(D)(4), the record reflects that D.W.'s present care givers desire to adopt her, rather than accepting legal custody of her, and no other relatives are willing or able to care for D.W. Accordingly, a grant of permanent custody was necessary for D.W. to achieve a legally secure permanent placement.
 {¶ 23} In light of this evidence, the trial court properly found that permanent custody was in D.W.'s best interest. Appellant's arguments to the contrary are without merit.
 {¶ 24} Appellant's first assignment of error is overruled.
 HEARSAY EVIDENCE {¶ 25} In her third assignment of error, appellant contends that the trial court committed reversible error by relying on inadmissible hearsay in reaching its decision. In her second assignment of error, appellant contends that she was denied her right to effective assistance of counsel because trial counsel did not object to the alleged hearsay. We consider these assignments of error together because they are related.
 {¶ 26} At the outset, we observe that appellant did not object to the alleged inadmissible hearsay in the trial court and, therefore, has waived any objection to the claimed error. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43. In limited circumstances, an appellate court may apply the doctrine of plain error and review an issue otherwise waived. In applying the doctrine of plain error in a civil case, however, "reviewing courts must proceed with the utmost caution, limiting the doctrine to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have material adverse effect on the character of, and public confidence in, judicial proceedings." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121. We find no such plain error here.
 {¶ 27} Juv.R. 34(B)(2), regarding dispositional hearings, provides that, "except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Division (I) of Juv.R. 34 provides that "the Rules of Evidence shall apply in hearings onmotions for permanent custody." (Emphasis added).
 {¶ 28} Here, CCDCFS filed a complaint with an original dispositional request for permanent custody, rather than a postdispositional motion to modify a prior disposition to permanent custody. Accordingly, hearsay evidence was admissible at the dispositional hearing. Cf. In re T.M.,III, Cuyahoga App. No. 83933, 2004-Ohio-5222.
 {¶ 29} Moreover, we find no plain error in the admission of the disputed testimony even if it were hearsay. Where a trial judge acts as the finder of fact, as in this case, a reviewing court should be reluctant to overturn a judgment on the basis of the admission of inadmissible testimony, unless it appears that the trial court actually relied on such testimony in arriving at its judgment, because the trial judge is presumed capable of disregarding improper testimony. In re Sims
(1983), 13 Ohio App.3d 37, 41; In re M.H., Cuyahoga App. No. 80620, 2002-Ohio-2968, at ¶ 73.
 {¶ 30} Here, although appellant argues that "the trial court relied on the inadmissible hearsay in rendering its final verdict," she offers nothing which demonstrates that the trial judge actually did so or that she was prejudiced by the testimony. We find nothing in the record that overcomes the presumption that the trial judge disregarded any evidence that was not properly before her.
 {¶ 31} Because we find no error in the admission of the alleged hearsay testimony, we conclude that appellant's trial counsel was not ineffective for failing to object to the alleged hearsay.
 {¶ 32} Appellant's second and third assignments of error are therefore overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Cooney, J., concur.
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.
[2] "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 104.