DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Donna H., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating her parental rights to Johnny H. Appellant's counsel has submitted a request to withdraw pursuant to Anders v. California (1967), 386 U.S. 738, asserting that there are no meritorious issues for appeal.Anders sets forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. We have found that "the procedures enunciated *Page 2 
in Anders, supra, are applicable to appeals involving the termination of parental rights." Morris v. Lucas County Children Services Board
(1989), 49 Ohio App.3d 86, 87.
 {¶ 2} In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. Id. at 744. See also, State v. Duncan (1978),57 Ohio App.2d 93. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
 {¶ 3} In this case, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. In support of his request, counsel for appellant states that, after carefully reviewing the transcript and record of proceedings in the trial court, and after researching case law and statutes relating to potential issues, counsel was unable to find an arguable, non-frivolous issue for appeal. Appellant has not filed a brief, however, counsel for appellant sets forth the following potential issues: *Page 3 
 {¶ 4} "I. The trial court erred by not granting appellant-mother's request for continuance of the permanent custody trial.
 {¶ 5} "II. The trial court's finding of permanent custody is against the manifest weight of the evidence."
 {¶ 6} Our examination of the record reveals the following facts.[1]
As alleged in the initial complaint, Johnny first came to the attention of Lucas County Children's Services ("LCCS") in the spring of 2004, when he was one month old. St. Vincent's Hospital reported that appellant and Johnny arrived at the hospital requesting cigarette money and some "GasX" for Johnny. Hospital workers advised appellant that "GasX" was an inappropriate medication for an infant. Appellant told hospital workers that her husband would be angry if she came home without money for cigarettes. She was given a stroller, bassinet, diapers, and milk, which were later found discarded outside the hospital. Appellant testified that she was unable to carry the baby items home. Later that same month, LCCS received an unidentified referral of concerns of abuse and neglect, which were unsubstantiated upon investigation.
 {¶ 7} Approximately one month later, when Johnny was two months old, appellant and her husband were arrested for shoplifting. The infant Johnny was with them at the time of his parents' arrest. Store employees reported that, when the theft was *Page 4 
discovered, appellant ran away across the store parking lot while holding Johnny. A charge of child endangering was filed for this incident, but was later dismissed. When found by police, appellant had a black eye and Johnny's clothes were dirty. Police took Johnny to LCCS as no relatives could be located. The LCCS investigator subsequently learned from appellant that her husband had sexually and physically assaulted her the morning of their arrest. Appellant also admitted to the investigator that her husband would put a pillow over Johnny's face or shove his face into the mattress to make him stop crying. Despite her concerns, appellant refused to report her husband's abuse. Appellant's husband was charged with domestic violence in addition to theft. Appellant was convicted of theft and incarcerated.
 {¶ 8} LCCS filed an emergency motion for shelter care and temporary custody, which were granted, and Johnny was placed in foster care. Appellant and her husband were given supervised visitation and ordered to undergo a substance abuse assessment upon their release from jail.
 {¶ 9} An adjudicatory hearing scheduled for August 11, 2004, was continued as appellant was still incarcerated from the theft charges and was not due to be released until October 2004. When the adjudicatory hearing was held, appellant and her husband were both present, having been conveyed from jail for the hearing, and were represented by counsel. *Page 5 
 {¶ 10} The police officer who arrested appellant for theft testified that appellant had a black eye and some bruising on her back. When the police officer first asked appellant how she was injured, appellant said that she had been "jumped." After the officer sequestered appellant from her husband, appellant said that her husband had hit her repeatedly and then forcibly sodomized her that morning, and that her husband would smother Johnny in order to quiet him. When appellant testified, she insisted that she had fabricated her statements regarding her husband's abuse because she was angry with him. As for her bruising at the time of her arrest, appellant explained that she had been assaulted a few days prior by several unknown women.
 {¶ 11} Next, the LCCS assessment caseworker assigned to Johnny's case testified that her involvement with the family began when LCCS received the referral from St. Vincent's Hospital. She visited appellant's home after that incident and found that Johnny's needs were met and the home was "appropriate," although she did not learn whether appellant had later obtained other medical assistance. During the visit, the caseworker learned from appellant that she had voluntarily terminated her parental rights to another child in Indiana, and that appellant and her husband had also voluntarily placed another child in the temporary custody of its paternal grandmother in Indiana. Appellant testified that she placed the child in the grandmother's temporary custody because she wanted to settle in Ohio before bringing the child, which she intended to do. Prior to appellant's shoplifting arrest, the caseworker testified that she received one other referral, *Page 6 
but it was unsubstantiated upon investigation.
 {¶ 12} After the father's testimony, appellant testified and largely recanted her prior statements as related by the police officer and caseworkers. She explained that she had a black eye on the day of her shoplifting arrest because she had been "jumped" by some unknown "girls." As to her assertions of domestic abuse given at the police station, she explained that she did not have bruises on her back and she lied because she was "trying to get [her husband] back." She also recanted her statements regarding her husband's abuse of Johnny. As to her criminal history, appellant acknowledged a previous conviction for child endangering for shoplifting baby formula at a grocery store while Johnny was with her. She asserted that, while incarcerated, she received her high school equivalency diploma and received help with a mental disability, receiving Prozac for her chronic depression. Appellant expressed a desire to receive substance abuse counseling after her release.
 {¶ 13} During closing arguments, both parents' counsel conceded that a dependency finding would be warranted due to their incarceration, but they argued that no evidence of neglect had been submitted. After a recess, however, the parties, on the record, stipulated to LCCS receiving temporary custody. Appellant was to receive supervised visitation and comply with a case plan that required her to engage in services for mental health, substance abuse, parenting, and domestic violence counseling. By journal entry, dated October 22, 2004, Johnny was adjudicated dependent and neglected *Page 7 
and temporary custody was granted to LCCS.
 {¶ 14} At a reasonable efforts review hearing on February 3, 2005, LCCS indicated that appellant had a "diagnostic assessment," and that she was scheduled for a substance abuse assessment and parenting classes. Appellant had visited Johnny once since her release from incarceration. While in foster care, Johnny was diagnosed with encephalomyelitis, or fluid-filled cysts in the brain, and was possibly visually impaired. The case plan goal was still reunification, but the caseworker opined that it would take much longer than the target date of May 2005 for appellant to complete services.
 {¶ 15} On May 27, 2005, LCCS filed a motion for permanent custody. At a hearing on June 27, 2005, LCCS informed the trial court that appellant was incarcerated in Vanderburgh County, Indiana, and the father's whereabouts were unknown; the caseworker had not had contact with the father in a month. The trial court granted LCCS's motion to extend its temporary custody pending the hearing on its motion for permanent custody.
 {¶ 16} The disposition was held on November 29, 2005. The trial court noted that appellant's counsel had filed a request for her conveyance from jail in Indiana. Alternatively, appellant's counsel requested a continuance until after her release date of March 8, 2006. The trial court orally denied both requests. The court asked appellant's counsel if he had discussed with appellant the option of being present via telephone, writing a letter to the court, or having her deposition taken in Indiana. Appellant's *Page 8 
counsel indicated that appellant had written a letter, which she requested her counsel read into the record at the hearing.
 {¶ 17} LCCS presented the testimony of the LCCS caseworker who had been assigned to Johnny's case since his parents' incarceration for shoplifting. She testified regarding her efforts at reunification, including referrals for substance abuse, mental health, and parenting classes. After appellant's substance abuse assessment, she was referred to intensive outpatient treatment in February 2005; appellant never participated in that service. After her mental health assessment, she was recommended for treatment; however, the caseworker was only aware that appellant had appeared for two treatment sessions. The caseworker testified that appellant never engaged in parenting classes because she was ineligible for classes until she completed her mental health and substance abuse treatment. To the caseworker's knowledge, appellant was incarcerated for theft charges in Indiana from June 2005, to the present and was due to be released in March 2006. Appellant had last visited Johnny in May 2005, approximately a month before she went to Indiana.
 {¶ 18} Johnny's guardian ad litem ("GAL") submitted a report supporting LCCS's motion for permanent custody. The GAL recommended that Johnny's need for permanency dictated that Johnny remain in the same foster home where he had been since he was two months old. He opined that appellant's chances of successfully reuniting with Johnny after her release were slim. *Page 9 
 {¶ 19} After closing arguments, the trial court orally granted LCCS's motion for permanent custody, finding it to be in the child's best interests. Having reviewed the entire record, we proceed to determine whether any arguable issues exist for appeal. Anders, 386 U.S. at 744.
 {¶ 20} The first potential issue raised by counsel states that "[t]he trial court erred by not granting appellant-mother's request for continuance of the permanent custody trial." Counsel argues that the trial court should have granted a continuance until appellant was released from her incarceration in Indiana.
 {¶ 21} A trial court has discretion to decide whether to proceed with a permanent custody hearing in the absence of an incarcerated parent.In re Jesse P., 6th Dist. No. L-04-1028, 2004-Ohio-3801, ¶ 49, citingState ex rel. Vanderlaan v. Pollex (1994), 96 Ohio App.3d 235; In reJoseph P., 6th Dist. No. L-02-1385, 2003-Ohio-2217. In Jesse P., we held that a trial court should balance the competing interests at stake in the proceedings to determine whether a parent's due process rights would be violated by holding the permanent custody hearing in their absence. "Specifically, a court should balance the following factors: `(1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural safeguards.'" Jesse at ¶ 51, citing In reSprague, 113 Ohio App.3d 274, 276. An incarcerated parent's due process right to attend the hearing is not violated when "(1) the parent is represented at the hearing by counsel, (2) a full record of the *Page 10 
hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition." Id., following In the Matter of LeoD., Deandre E., and Desandra E. (March. 15, 2002), 6th Dist. No. L-01-1452; In re Robert F. (Aug. 20, 1997), 9th Dist. No. 18100. See, also, In re G.C. and M.C., 8th Dist. No. 83994, 2004-Ohio-5607.
 {¶ 22} In this case, appellant was represented by diligent counsel, a full record of the hearing was made for appellate purposes, and the trial court offered to have appellant's deposition testimony taken. Instead, appellant wrote her counsel a letter, the bulk of which was read into the record, and accepted into evidence. These steps and considerations of the trial court adequately safeguarded appellant's due process rights. Accordingly, we find the first proposed assignment of error not well-taken.
 {¶ 23} In the second proposed issue for review, counsel states that "[t]he trial court's finding of permanent custody is against the manifest weight of the evidence." All findings by the trial court with respect to a motion for permanent custody must be supported by clear and convincing evidence. R.C. 2151.414(B); In re William S. (1996),75 Ohio St.3d 95. An appellate court will not overturn the judgment as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re S et al. (1995),102 Ohio App.3d 338, 344-345; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph *Page 11 
three of the syllabus.
 {¶ 24} Pursuant to R.C. 2151.353(A)(4), if a child is adjudicated dependent, the trial court may make an order of disposition committing the child to the permanent custody of LCCS if it determines in accordance with R.C. 2151.414(E) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance R.C. 2151.414(D) that the permanent commitment is in the best interest of the child. Due to appellant's incarceration, we find that her stipulation of Johnny's dependency was warranted pursuant to R.C. 2151.04(A), which defines a dependent child as one "[w]ho is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian." See, also, In re S.H., 12th Dist. No. CA2005-01-007, 2005-Ohio-5047, ¶ 18. Accordingly, we find that the trial court's adjudication of dependency was supported by clear and convincing evidence. In re Alexander C. (2005), 164 Ohio App.3d 540, 553.
 {¶ 25} Prior to terminating a parent's paramount right to the custody of his or her child, the trial court must find that the parent is unsuitable. In re Perales (1977), 52 Ohio St.2d 89, syllabus. The parental "unsuitability" requirement is codified in R.C. Chapter 2151, which sets forth the due process requirements and statutory findings with which the trial court must abide.
 {¶ 26} In determining whether a "child cannot be placed with one of the child's *Page 12 
parents within a reasonable time or should not be placed with either parent," R.C. 2151.414(E) sets forth a list of 16 predicate findings to be considered by the trial court. As to appellant's unsuitability, the trial court found that the factors listed in R.C. 2151.414(E)(1), (4), (10), (13), (16), established that Johnny could not be placed with one of his parents within a reasonable time, or should not be placed with either parent. These sections state:
 {¶ 27} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 28} "* * * *Page 13 
 {¶ 29} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 30} "* * *
 {¶ 31} "(10) The parent has abandoned the child.
 {¶ 32} "* * *
 {¶ 33} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 34} "* * *
 {¶ 35} "(16) Any other factor the court considers relevant." R.C.2151.414(E).
 {¶ 36} In determining whether "permanent commitment is in the best interest of the child," R.C. 2151.414(D) requires the trial court to consider the following, non-exhaustive, list of factors:
 {¶ 37} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 38} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 14 
 {¶ 39} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 40} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 41} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 42} We find that clear and convincing evidence supports a finding that permanent custody is in Johnny's best interests. Johnny had not lived with appellant since he was two months old due to her incarcerations. In between her incarcerations, she failed to engage in services that would allow her to become stable and regain custody of Johnny. Johnny's special needs were being met by his foster mother, with whom he had bonded well, and who wished to adopt Johnny. The lack of connection between appellant and her son, due to her incarcerations and Johnny's need for permanency and stability, supports a finding that a grant of permanent custody would be in his best interest. See, In reD.W., 8th Dist. No. 84547, 2005-Ohio-1867, ¶¶ 20-21. We find no error in the order of disposition, and find appellant's second proposed assignment of error not well-taken. *Page 15 
 {¶ 43} Accordingly, we find counsel for appellant correctly determined that there was no meritorious appealable issue present in this case. Upon a thorough review of the record, we also independently find no grounds for a meritorious appeal. This appeal is, therefore, found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J. CONCUR AND WRITES SEPARATELY.
[1] Because appellant's husband, Johnny's father, is not a party to this appeal, the facts are largely limited to appellant's circumstances. *Page 16